IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:10-CV-00077-D

| | | |
|---|---|---|
| BETTY JEAN WILKERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on the parties' cross motions for judgment on the pleadings. Claimant, Betty Jean Wilkerson, seeks judicial review of the Commissioner's denial of her application for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). After a thorough review of the record and consideration of the briefs submitted by counsel, it is recommended that Claimant's motion for judgment on the pleadings [DE-27] be denied and that the Commissioner's motion for judgment on the pleadings [DE-28] be granted.

## STATEMENT OF THE CASE

Claimant protectively filed an initial application for DIB and SSI benefits on July 28, 2006. (R. 8, 118-126.) She alleged disability beginning August 2, 2005 due to carpal tunnel syndrome, arthritis, and knee pain. (R. 147.) This application was denied initially (R. 72-76) and upon reconsideration (R. 77-83). Claimant then requested a hearing before an Administrative Law Judge ("ALJ") (R. 86-88), which took place on October 21, 2008 (R. 17-65). On January 14, 2009, the ALJ issued a decision denying Claimant's application in its entirety. (R. 5-16.) The Appeals

Council ("the Council") denied Claimant's request for review on February 25, 2010 (R. 1-3), which rendered the ALJ's decision a "final decision" for purposes of judicial review. *See Walls v. Barnhart*, 296 F.3d 287, 289 (4th Cir. 2002) (noting that when the Council denies a request for review, the underlying decision by the ALJ becomes the agency's final decision for purposes of appeal). On June 22, 2010, Claimant commenced this action pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I. Standard of review

The scope of judicial review of a final decision regarding disability benefits under the Social Security Act is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *Walls*, 296 F.3d at 290; 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). This Court must not weigh the evidence, as it lacks the authority to substitute its judgment for that of the Commissioner. *Walls*, 296 F.3d at 290. Rather, when conflicting evidence is presented, it is up to the ALJ to resolve those inconsistencies and not the responsibility of the Court to determine the weight of the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Therefore, in determining whether substantial evidence supports the Commissioner's decision, the Court's review is limited to whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his or her findings and rationale in crediting the evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

2

## II.    The Social Security framework

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed in a disability case. 20 C.F.R. §§ 404.1520, 416.920. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. If the claimant is not engaged in substantial gainful activity, then at step two the Commissioner must determine whether the claimant has a severe impairment or combination of impairments which significantly limit his or her ability to perform basic work activities. If no severe impairment is found, the claim is denied. If the claimant has a severe impairment, at step three the Commissioner determines whether the claimant's impairment meets or medically equals the requirements of one of the Listings of Impairments ("Listings"), as listed in 20 C.F.R. § 404, Subpart P, App. 1. If the impairment meets or equals a Listing, the person is disabled *per se*. If the impairment does not meet or equal a Listing, at step four the claimant's Residual Functional Capacity ("RFC") is assessed to determine if the claimant can perform his or her past work despite the impairment. If so, the claim is denied. If the claimant cannot perform his or her past relevant work, at step five the burden shifts to the Commissioner to show that the claimant, based on his or her age, education, work experience and RFC, can perform other substantial gainful work.

## III.    The ALJ's findings

Here, the ALJ proceeded through the five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920. First, at step one, the ALJ found that Claimant had not engaged in substantial gainful activity since August 2, 2005, the alleged onset date. (R. 9.) Next, at step two, the ALJ found that Claimant suffered from the severe impairments of degenerative disc disease,

3

bilateral meniscus dysfunction, and carpal tunnel syndrome.[1] (R. 10.) However, at step three the ALJ determined that Claimant's impairments did not meet or medically equal a Listing. *Id.* Instead, at step four, the ALJ determined that Claimant retained the RFC to perform light work with limitations, though the ALJ did find that Claimant was unable to perform past relevant work. (R. 13.) Finally, at step five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Claimant could perform. (R. 14.) As a result, the ALJ found that Claimant was not disabled. *Id.*

## IV. The October 21, 2008 administrative hearing

### A. Claimant's testimony at the administrative hearing

Claimant testified to the following at the October 21, 2008 administrative hearing held in conjunction with her application for DIB and SSI benefits. (R. 19-59.) At the time of the hearing, she was 43 years old and living in Lumberton, North Carolina with her 16-year-old daughter and 12-year-old son. (R. 21.) She had a ninth grade education, owned and was able to drive a car, and was not currently working. (R. 21-24.) Claimant's only employer had been Kaiser Roth, where she had worked as a pantyhose machine operator and packer. (R. 22.) In that position, she had alternated running a machine for an hour with "packing out" for an hour, and was required to stand part of the time and to sit part of the time. (R. 22-23.) She testified that she had left that job in August of 2005 when she "couldn't take the pain anymore," and had not looked for work since. (R. 23-24.)

Claimant testified to a number of conditions that impeded her ability to work. Notably, Claimant had had surgery on her neck in April of 2008 to correct a disc problem that had been

---

[1] The ALJ also found, however, that Claimant had *not* established that she suffered from any of the following additionally alleged severe impairments: high blood pressure, reflux, an under-active thyroid, frequent urination, fibromyalgia, obstructive sleep apnea, or depression. (R. 10-11.)

4

discovered in July of 2005. (R. 24, 26-28, 42.) She had been experiencing pain for some time before the surgery but had hesitated for several years because of the risks involved. (R. 43-44.) In addition, Claimant testified that she was having problems with arthritis, which caused constant pain in her neck as well as other parts of her body including her lower back and knees. (R. 37-38.) She also reported having high blood pressure, which caused dizzy spells once or twice a day (R. 45-46) and mentioned that she had problems with an underactive thyroid, muscle spasms in her neck, arms, and legs, chest pains, fibromyalgia, an overactive bladder, acid reflux, heartburn, and sleep apnea (R. 47-50, 52). Finally, Claimant testified that she had recently begun having problems with depression, which caused her to cry a couple times a day and for which she was receiving counseling. (R. 51-52, 58.)

At the time of the administrative hearing, Claimant was taking "like 10 bottles" of different medications, including an arthritis medicine, Lorcet Plus, a blood pressure medicine, a thyroid medicine, Soma (a muscle relaxant), Lyrica, medication for her overactive bladder, and medication for her acid reflux and heartburn. (R. 25-26, 46-50.) Her other treatments included going to physical therapy two days a week for her neck and lying down two to three times a day for at least 30 minutes in order to get relief. (R. 30, 39.)

As far as her daily routine, Claimant testified that she was getting up at around 7:00 a.m. with her children and helping them get ready for school. (R. 31.) She initially testified that she was able to do a little shopping, cooking, light housework such as dishes and laundry, attend to her personal needs, and go to church. (R. 34-35.) However, she later testified that she was having some level of difficulty with tasks such as "scooping," dressing herself, doing her hair, getting in and out of bed, cooking, doing laundry, cleaning, driving, and going up stairs. (R. 54-58.) She also indicated that

5

she was trying to walk for at least 10-20 minutes a day but had to stop and rest, that she had not been using her arms or hands since her surgery, that she could only stand for a few minutes before her back started hurting or sit for more than 30 minutes without getting up, and that she was having problems with grasping and losing her grip. (R. 33, 35, 53-54.)

## B.    Vocational expert's testimony at the administrative hearing

Jan Clifford, a vocational expert ("VE"), also testified at the administrative hearing. (R. 59-63.) Ms. Clifford had reviewed the vocational records in the case and was present for Claimant's testimony as to her past work. (R. 60.) Ms. Clifford stated that Claimant had performed past work as a pantyhose machine operator and packer, which would qualify as light unskilled work. *Id.* The ALJ then posed the following hypothetical to Ms. Clifford:

> I want you to assume a hypothetical claimant, 43 years old, with a 9th grade education. I want you to assume that the individual could perform light work, that is to say that she could occasionally lift up to 20 pounds but more frequently 10 pounds. And no, she would be able to sit, you know, sit normally, stand normally. Although she had said she had trouble standing and walking but for the purpose of the hypothetical, just assume that she can do all the exertional requirements that necessary [sic] except she would only be able to occasionally climb, balance, stoop, crouch, kneel, and crawl. She would, she could do no more than frequent use of the right upper extremity for reaching, handling, and fingering. Now, she could, she still has skin to touch. She has no problem with that but she would only be able to frequently use the right upper extremity for reaching, handling, and fingering. Those would be the limitations that I would pose to you now. With the limitations on the use of her upper extremity, would she be able to do the job she's done in the past?

(R. 61.) Ms. Clifford responded that, regarding Claimant's past relevant work, "the reaching and handling on that is constant so that would be outside of your hypothetical for that question." *Id.* Ms. Clifford did indicate that there were "other entry-level type jobs that would accommodate those limitations," such as (1) information clerk, DOT code 237.367-018, strength level light, unskilled; (2) photo counter clerk, DOT code 249.366-010, strength level light, unskilled; and (3) storage

6

facility rental clerk, DOT code 295.367-022, strength level light, unskilled. (R. 61-62.) Ms. Clifford indicated that these three potential jobs were being performed by 1,626, 1,475, and 3,343 workers in North Carolina, respectively. (R. 62-63.)

> The ALJ next posed the following question to Ms. Clifford:
>
> Now, Ms. Wilkerson has testified to a number of impairments. She's testified to not only the problems with her neck and her shoulders, she's testified to low back pain, she's testified to knee pain, she's testified to depression, she's testified to sleep apnea, high blood pressure. She says [sic] makes her dizzy. She testified to some side effects of medications. If I find that as a result of her testimony that she might to some extent, she may have, seen absences from the job site to the extent of say, 30 days a year, how would that affect her ability to do these unskilled jobs you've identified?

(R. 63.) Ms. Clifford responded that, "if an employer didn't necessary [sic] send in to that type of absenteeism and critical job demands were not being met, than [sic] long-term employment could be hindered and potential loss of job." *Id.*

## V.    Claimant's arguments on appeal

On appeal, Claimant argues generally that the ALJ's decision was not supported by substantial evidence and that it was not reached through the application of the correct legal standards. In so doing, Claimant argues intermittently that the ALJ committed a variety of more specific errors. In responding to Claimant's motion, the Commissioner has grouped Claimant's allegations into seven main arguments: (1) that the ALJ erred in determining that she was not fully credible; (2) that the ALJ erred in failing to give adequate weight to the opinions of her treating physicians; (3) that the ALJ failed to properly consider her pain complaints; (4) that the ALJ failed to properly consider all of her severe impairments; (5) that the ALJ failed to consider her impairments in combination in determining her RFC; (6) that the ALJ failed to perform a function-by-function analysis in

7

establishing her RFC; and (7) that the ALJ failed to propose a proper hypothetical question to the VE. Mem. in Supp. of the Comm.'s Mot. for Summ. J. at 13 [DE-29] (hereinafter "Comm.'s Mem."). The Court finds that the Commissioner's response utilizes a reasonable organization of Claimant's arguments and leaves no relevant contention unaddressed. Accordingly, the Court will proceed in its analysis using this framework, addressing each of Claimant's arguments in turn.

A. **Claimant's argument that the ALJ erred in determining that she was not fully credible.**

First, Claimant argues that the Commissioner erred in determining that she was not fully credible. To that end, Claimant contends that the ALJ erred in so concluding based on his interpretation of her daily activities and the presence of inconsistencies in the record, and that, if the ALJ wished to reject her subjective testimony, he was required to do so explicitly and with specificity. Mem. in Supp. of Pl.'s Mot. for J. on the Pleadings at 29 [DE-27-1] (hereinafter "Cl.'s Mem.").

In response, the Commissioner argues that the ALJ correctly found that Claimant was "not entirely credible due to various inconsistencies between her testimony and the medical records." Comm.'s Mem. at 10. As examples, the Commissioner points to the ALJ's finding that Claimant testified that she suffered from depression for which she received mental health care but no records of such treatment exist in the record and his finding that she testified that she had to lie down 2-3 times daily for 30 minutes but did not report this to her physicians. *Id.* at 11-12. The Commissioner also contends that the evidence supports a finding that Claimant's pain complaints were not in line with her ability to maintain a daily routine. *Id.* at 12.

8

In assessing credibility, the ALJ must follow a two-step process. First, the ALJ must determine whether the claimant's medically determinable impairments could reasonably cause the alleged symptoms. *Craig v. Chater*, 76 F.3d 585, 594-95 (4th Cir. 1996). Next, the ALJ must evaluate the evidence, including the claimant's statements, regarding those symptoms. *Id.* at 595. Social Security Ruling ("SSR") 96-7p requires that the ALJ's decision "contain specific reasons for the finding on credibility, supported by the evidence in the case record, [which] must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2 (S.S.A. July 2, 1996).

Here, first, the ALJ found that Claimant's medically determinable severe impairments–degenerative disc disease, bilateral meniscus dysfunction, and carpal tunnel syndrome–could theoretically be expected to produce some of the subjective symptoms alleged by Claimant. (R. 11.) However, next, the ALJ found that "[C]laimant's testimony as to the specific intensity, persistence, and limiting effects of her pain and other subjective symptoms [was] not persuasive in view of her daily activities and the inconsistencies in the record." *Id.* In so finding, the ALJ pointed to specific evidence in the record which he believed supported his conclusion. For example, the ALJ noted Claimant's testimony that she could not stand for more than 30 minutes, had to rest after walking only 10-20 minutes, had to lie down 2-3 times daily for 30 minutes, and needed both hands to lift a gallon of milk–but that the record did not reflect that she had reported any of those restrictions to her physicians or that any physician had independently observed what should have been readily apparent "chronic severe functional limitations." (R. 11-12.) In addition, the ALJ noted that Claimant's "ability to maintain her household and adequately care for her children [was]

9

a further persuasive indicator that her pain and other symptoms and resultant functional limitations are not consistent with a finding that at the same time she is so debilitated as to be unable to perform any substantial gainful activity whatsoever." (R. 12.) The ALJ concluded that such inconsistencies were "sufficient to establish that the testimony is divergent from the medical evidence to a degree sufficient to render the testimony both unreliable and unpersuasive."[2] *Id.*

In this case, the ALJ proceeded through the two-step process as required. In rejecting Claimant's subjective testimony, the ALJ clearly articulated the weight that he gave to Claimant's statements and the reasons for that weight, contrary to Claimant's assertions that he did not do so explicitly and with specificity. The fact that Claimant can point to other evidence in the record that supports her claimed impairments and their alleged severity does not diminish the ALJ's analysis or the fact that his opinion was supported by substantial evidence. When conflicting evidence is presented, the ALJ retains the discretion to resolve such inconsistencies. *Hays*, 907 F.2d at 1456. The ALJ thoroughly explained his credibility analysis and pointed to specific points of evidence in the record which supported his conclusion that Claimant was not fully credible, and, in so doing, satisfied his duty under the applicable regulations and law.

Therefore, for the foregoing reasons, the Court finds that the ALJ accurately evaluated Claimant's credibility and that his determination that she was not fully credible was supported by substantial evidence. Accordingly, Claimant's argument that the ALJ erred in determining that she was not fully credible is rejected.

---

[2] The ALJ also noted that he believed there to be additional instances of discrepancies between Claimant's testimony and the record, but that he did not find it necessary to detail each and every one in support of his adverse credibility finding. (R. 12.)

**B.      Claimant's argument that the ALJ erred in failing to give adequate weight to the opinions of her treating physicians.**

Claimant next argues that the ALJ erred in failing to give adequate weight to the opinions of her treating physicians. To that end, Claimant contends that the ALJ's finding that her symptoms of "depression, HTN, hypothyroid, reflux, and frequent urination" did not constitute additional severe impairments was contrary to the opinion of Claimant's treating physicians. Cl.'s Mem. at 18. Therefore, Claimant believes that the ALJ erroneously assessed her disability by ignoring the opinion of her treating physicians, not taking into consideration all of her impairments as observed by her treating physicians, and instead improperly giving great weight to non-treating consultants' review of the medical records which found no restrictions on Claimant's ability to work. *Id.* at 19. Instead, she contends that the opinions of her treating physicians at Laurel Hill, Pinehurst, and Southeastern should have been entitled to controlling or extra weight. *Id.*

In response, the Commissioner argues that, in fact, the ALJ noted that he gave great weight to the non-treating consultants' review of the record because he was persuaded that their conclusions were consistent with the totality of the evidence. Comm.'s Mem. at 13-14. Further, the Commissioner contends that the ALJ appropriately acknowledged and specified his reasons for rejecting the opinions of Claimant's treating physicians. *Id.* at 15.

Controlling weight is given to the opinion of a treating source on the nature and severity of an impairment if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(d)(2). However, an opinion not supported by clinical evidence or inconsistent with other substantial evidence may be accorded significantly less weight. *Craig*, 76 F.3d at 590. A statement by a

11

treating physician that a claimant is unable to work will not necessarily lead to a finding that the claimant is disabled. *See* 20 C.F.R. § 404.1527(e)(1). Opinions such as these "are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of the case." 20 C.F.R. § 404.1527(e).

Here, the record contains evidence that Claimant was seen at four medical centers between 2005 and 2008: Southeastern (R. 178-79, 193-238, 293-309), Scotland Memorial (R. 180-84, 239), Laurel Hill (R. 185-89, 254-61, 281-92), and Pinehurst (R. 240-44, 262-63, 277-80). At various points in his decision, the ALJ considered the opinions of Claimant's treating physicians at all four of these facilities. For example, the ALJ noted that Dr. Staley T. Jackson at Southeastern had found that Claimant had carpal tunnel syndrome and bilateral meniscus pain but did better with use of a non-steroidal anti-inflammatory, that a physician at Scotland Memorial had found Claimant's elbows and knees to be normal and her lumbar spine to be "essentially normal," and that Dr. Malcolm Shupeck at Pinehurst had found that Claimant had a disc protrusion which caused level 10 pain (on a scale of 1 to 10) but nonetheless declined surgery. (R. 9.) In addition, the ALJ reviewed Claimant's visits to Laurel Hill at some length and specifically stated that he had "considered [the fact] that Claimant's treating physician at Laurel Hill repeatedly opined that the claimant would have no work capacity for periods of as long as 6 months" but that he determined that this physician had "simply stated a conclusory opinion" without "describ[ing] significant functional limitations experienced by the claimant with references to the medical records." (R. 13.) The ALJ also stated that he was "persuaded that th[is] physician based her opinion in whole or in large part on the claimant's subjective complaints," which, as discussed in Section V.A, *supra*, the ALJ did not find to be credible. *Id.* On the contrary, the ALJ found that the findings of the non-treating state agency

12

medical consultants that Claimant retained the RFC to perform light work with limitations was "consistent with the totality of the evidence" and "not contradicted by other persuasive medical opinion or by credible testimony." *Id.* Therefore, the ALJ declined to give controlling weight to the opinion of Claimant's treating physician at Laurel Hill that she lacked the capacity to work and, instead, relied upon the state agency medical consultants' opinion that Claimant retained the RFC to perform light work with limitations. *Id.*

In this case, the Court has reviewed all of the relevant medical evidence, as well as the ALJ's reasoning, and finds that the medical opinions of Claimant's treating physicians were properly considered by the ALJ. However, when weighed alongside the opinions of the state agency medical consultants, the ALJ rejected those aspects that he found to be unsupported by clinical evidence or inconsistent with other substantial evidence of record. Instead, though the ALJ acknowledged that the findings of the non-treating state agency medical consultants were not entitled to controlling weight, he nonetheless was persuaded that their conclusions were "consistent with the totality of the evidence" and "not contradicted by other persuasive medical opinion or by credible testimony." (R. 13.) Once again, when conflicting evidence is presented, the ALJ retains the discretion to resolve such inconsistencies. *Hays*, 907 F.2d at 1456. The ALJ's ultimate conclusion that Claimant retained the RFC to perform light work with limitations, though out of step with the opinion of Claimant's physician at Laurel Hill, was supported by substantial evidence, and as the regulations make plain, the physician at Laurel Hill's opinion regarding Claimant's work capacity was not a medical opinion and need not have been given any special consideration or weight by the ALJ.

Therefore, for the foregoing reasons, the Court finds that the ALJ appropriately evaluated the opinions of Claimant's treating physicians and that substantial evidence supported his

13

determination that they were not entitled to controlling weight. Accordingly, Claimant's argument that the ALJ erred in failing to give adequate weight to the opinions of her treating physicians is rejected.

### C. Claimant's argument that the ALJ failed to properly consider her pain complaints.

Claimant next argues that the ALJ failed to properly consider her pain complaints. To that end, she contends that the ALJ failed to consider objective medical evidence of pain and other symptoms, as testified to by her and supported by medical reports, and that the ALJ erroneously rejected her testimony based on his conclusions about her ability to engage in daily activities and the lack of a significant limitation on her functional capacity. Cl.'s Mem. at 20. Further, she contends that "subjective testimony can establish disability if it is sufficiently supported by medical evidence." *Id.* at 26.

In response, the Commissioner argues that the ALJ correctly "pointed out that objective medical evidence of a condition that can cause the alleged pain is not enough," but that disability depends on "the severity of such pain and its effects on functionality." Comm.'s Mem. at 16. In addition, the Commissioner contends that the ALJ was correct to find that Claimant's pain was adequately controlled with medication, that she had not been referred to a pain management specialist, and that her daily activities reflect the fact that she is only "minimally functionally impaired." *Id.* at 16-17.

"Pain is not disabling *per se*, and subjective evidence of pain cannot take precedence over objective medical evidence or the lack thereof." *Craig*, 76 F.3d at 592 (citations omitted). Similarly, complaints of pain must be supported by "medical signs and laboratory findings showing that a

14

medically determinable impairment is present which reasonably could be expected to produce the

pain. 20 C.F.R. § 404.1529(a); *see also* SSR 96-7p, 1996 WL 374186, at *1-2 (S.S.A. July 2, 1996)

("No symptom or combination of symptoms can be the basis for a finding of disability, no matter

how genuine the individual's complaints may appear to be, unless there are medical signs and

laboratory findings demonstrating the existence of a medically determinable physical or mental

impairment(s) that could reasonably be expected to produce the symptoms."). Furthermore, a

claimant's complaints of pain may be undermined by his or her ability to perform a wide variety of

daily activities. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) ("The only fair manner to

weigh a subjective complaint of pain is to examine how the pain affects the routine of life.").

Here, in considering Claimant's subjective complaints of pain, the ALJ engaged in the

following analysis:

> Additionally, although the claimant testified that her medications did not make her
> pain go away completely, the fact that she has a degree of residual pain even with use
> of medications is not supportive of a finding that she is therefore "disabled". Rather,
> a finding of disability is appropriate if an individual experiences pain of such severity
> as to be rendered unable to perform basic work related tasks. In the claimant's case,
> her testimony that her medications did not make her pain go away completely
> necessarily implies that those medications are effective in relieving a significant
> degree of her pain, and I can therefore only conclude that the claimant's pain is
> adequately controlled with medication. However, a disorder which is controllable
> with medication is not "disabling". Also, if the claimant in fact continued to
> experience pain of such severity as to significantly inhibit her ability to perform basic
> work related tasks, it would be reasonable to expect that she would seek additional
> treatment for such pain, such as treatment at a hospital emergency room or other
> urgent care facility, or referral to a pain management specialist for more
> comprehensive treatment of such pain. Yet, there is no indication that the claimant
> has sought such treatment, or that she has been referred to a pain management
> specialist for more comprehensive treatment of pain. In view of the foregoing, I can
> again only conclude that this is another persuasive indicator that the claimant's pain
> is adequately controlled with her current treatment regimen. Also, the claimant's
> ability to maintain her household and adequately care for her children is a further
> persuasive indicator that her pain and other symptoms and resultant functional

15

limitations are not consistent with a finding that at the same time she is so debilitated
as to be unable to perform any substantial gainful activity whatsoever.

(R. 12) (citations omitted). The ALJ also stated that, in resolving the conflict he perceived between
the objective medical evidence and Claimant's subjective testimony, he was persuaded that the
objective medical testimony was the more persuasive evidence. *Id.*

As discussed in Section V.A, *supra*, the Court finds that the ALJ did not err in his
determination that Claimant was not fully credible as a general matter. Essentially, Claimant's
argument that the ALJ failed to properly consider her pain complaints is simply another iteration of
her argument that the ALJ failed to find those complaints, among Claimant's other testimony, to be
credible. In finding that Claimant was not fully credible, the ALJ appropriately weighed her
subjective pain complaints, as well as the objective medical evidence, and determined that the
objective medical evidence was more persuasive. In so doing, the ALJ found that Claimant's pain
complaints were not tied to evidence indicating a medically determinable impairment, and that,
furthermore, they were undermined by her ability to perform a wide variety of daily activities. *See*
20 C.F.R. § 404.1529(a); *Mickles*, 29 F.3d at 921.

Therefore, for the foregoing reasons, the Court finds that the ALJ appropriately considered
Claimant's pain complaints before finding them unpersuasive and that this determination was based
on substantial evidence. Accordingly, Claimant's argument that the ALJ failed to properly consider
her pain complaints is rejected.

## D.     Claimant's argument that the ALJ failed to properly consider all of her severe impairments.

Claimant next argues that the ALJ failed to properly consider all of her severe impairments.
To that end, she contends that "[t]he ALJ's conclusion that Claimant's other symptoms that he found

16

were not severe medically determined impairments was in error." Cl.'s Mem. at 21. Specifically, Claimant believes that the ALJ erroneously concluded that her high blood pressure and depression were not severe impairments. *Id.* at 21-22. She believes that the ALJ erroneously concluded that these impairments were not severe because of the fact that she did not report them to her treating physicians, and points to pages in the record which, she contends, prove that she did report them. *Id.* Claimant also argues that the ALJ erred in concluding that these "symptoms were not medically determinable because they did not impose any *significant* limitations on her ability to perform substantial gainful activity," because the ALJ's imposition of a "significance" requirement impermissibly enhanced the applicable standards. *Id.* at 22 (emphasis in original).[3]

In response, the Commissioner argues that the ALJ carefully explained why he did not consider Claimant's additionally alleged impairments to be severe impairments. Comm.'s Mem. at 18. The Commissioner responds to Claimant's belief that she did in fact report her additional allegedly severe impairments to her treating physicians by contending that, while the record reflects that she mentioned them, she never reported "significant depressive symptoms" or "any significant symptoms deriving from high blood pressure," and that, therefore, the ALJ did not err in not finding them to be severe impairments. *Id.* at 18-19. The Commissioner also argues that the ALJ did not err in imposing a requirement of significance because the regulations clearly state that an impairment is not severe if it does not significantly limit a claimant's ability to work. *Id.*

---

[3] *See also*, Cl.'s Mem. at 30 ("In this case the record does not present sufficient contrary medical evidence for the Commissioner's rejection of Claimant's impairments that he found non-severe because he considered such symptoms to be mild and are not expected [sic] to impose a *significant* limitation on daily functional capacity.") (emphasis in original).

17

The regulatory definition of a severe impairment is an impairment which significantly limits a claimant's physical or mental ability to do a basic work activity. 20 C.F.R. § 404.1521(a). In assessing the severity of a claimant's impairment, an ALJ is required to make "a careful evaluation of the medical findings that describe the impairment(s) (i.e., the objective medical evidence and any impairment-related symptoms), and an informed judgment about the limitations and restrictions the impairment(s) and related symptom(s) impose on the individual's physical and mental ability to do basic work activities." SSR 96-3p, 1996 WL 362204, 61 FR 34468, 34469 (S.S.A. July 2, 1996).

Here, the ALJ specifically considered Claimant's allegations that she suffered from high blood pressure, reflux, an under-active thyroid, frequent urination, fibromyalgia, obstructive sleep apnea, and depression and found that none of these conditions constituted additional severe impairments within the meaning of the regulations. (R. 10-11.) Regarding Claimant's alleged high blood pressure, the ALJ found that:

> [A]lthough the claimant testified that she had high blood pressure causing dizziness twice a day, the medical evidence does not show that the claimant reported any significant symptoms associated with high blood pressure. The evidence shows only that the claimant has 'medically determinable' high blood pressure and that she is prescribed medicine to treat that condition. It would be reasonable to expect that if the claimant in fact had significant symptoms deriving from high blood pressure, such as chronic dizziness, she would report such symptoms to her treating physician. Yet, she did not, and I can therefore only conclude that any such symptoms that the claimant experiences are of such mild intensity that she did not deem it necessary to report. I can therefore only further conclude that under any reasonable interpretation, such mild symptoms would not be expected to impose any significant limitation on the claimant's functional capacity. Hence, although 'medically determinable', the claimant's high blood pressure is not 'severe'.

(R. 10.) Regarding Claimant's alleged depression, the ALJ found that:

> The medical evidence is not supportive of her testimony, and in fact shows only passing references to depression. There is no indication in the evidence that the claimant has reported significant depressive symptoms to her treating physicians, nor

18

is there any indication that she has received any significant treatment for depression. In the absence of such reports or treatment, I can again only conclude that despite her testimony, any depressive symptoms that the claimant in fact experiences are of such mild severity that she did not deem it necessary to report them or to seek treatment for them. Consequently, I can only further conclude that symptoms of such mild severity would not, under any reasonable interpretation be expected to impose any significant functional limitation. Therefore, even if 'medically determinable', which is questionable, the claimant's alleged 'depression' is not a 'severe' impairment.

(R. 11.)

As discussed more fully in Sections V.A-C, *supra*, the ALJ's credibility determination and his decision to discount Claimant's testimony and the opinions of her treating physicians were supported by substantial evidence and not in error. Therefore, the Court finds that the ALJ did not err in relying upon other evidence to arrive at the conclusion that, though Claimant suffered from several severe impairments, high blood pressure and depression were not among them. Claimant is correct that there is evidence in the record which indicates that she mentioned her depression to at least one treating physician. (R. 283.) However, the ALJ did not find that Claimant had never *mentioned* her depression, but instead that she had never reported "significant depressive symptoms" or received "significant treatment for depression." (R. 11.) The Court's independent review of the record leads it to conclude that this appears to be true, and that therefore, the ALJ did not err in so finding. Similarly, Claimant's citations to the record which are designed to indicate that she reported severe symptoms resulting from high blood pressure are unconvincing. At best, it can be discerned from the medical records that Claimant mentioned her high blood pressure to her treating physicians and was prescribed medication to treat it. However, as with her depression, the ALJ did not find that Claimant did not *suffer* from high blood pressure or that she did not ever discuss the condition with her treating physicians, but rather that she had never reported "significant symptoms deriving from

19

high blood pressure, such as chronic dizziness." (R. 10.) This, once again, appears to the Court upon independent review to be true, and, therefore the ALJ again did not err in so finding. Finally, the Court notes that the plain language of the regulations defeats Claimant's argument that the ALJ's imposition of a "significance" requirement impermissibly enhanced the applicable standards. *See* 20 C.F.R. § 404.1521(a) ("An impairment or combination of impairments is not severe if it does not *significantly* limit [a claimant's] physical or mental ability to do basic work activities.") (emphasis added).

Therefore, for the foregoing reasons, the Court finds that the ALJ's determination that Claimant's high blood pressure and depression were not severe impairments which significantly limited her physical or mental ability to do a basic work activity was based on substantial evidence. Accordingly, Claimant's argument that the ALJ failed to properly consider all of her severe impairments is rejected.

E.     **Claimant's argument that the ALJ failed to consider her impairments in combination in determining her RFC.**

Claimant next argues that the ALJ failed to consider her impairments in combination in determining her RFC. To that end, Claimant contends that the ALJ's decision does not cite medical evidence, and that the ALJ erred by failing to consider "some of the important evidence presented," namely Claimant's "other symptoms and impairments . . . e.g. chronic pain, high blood pressure, severe hypothyroid disorder and sleep apnea." Cl.'s Mem. at 26-27.

In response, the Commissioner argues that the ALJ *did* consider Claimant's other alleged impairments, but correctly concluded that they were not severe and thus could not serve as the basis

20

for a finding of disability. Comm.'s Mem. at 19. Similarly, the Commissioner notes that, in determining Claimant's RFC, the ALJ appropriately considered all of the available evidence. *Id.*

An ALJ must assess a claimant's RFC based on all of the relevant medical and other evidence. 20 C.F.R. § 404.1545(a)(3). When a claimant has multiple different impairments, an ALJ must consider their cumulative effects. 42 U.S.C. § 423(d)(2)(B); *Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989). However, "[s]ufficient consideration of the combined effects of a plaintiff's impairments is shown when each is separately discussed in the ALJ's decision, including discussion of a plaintiff's complaints of pain and level of daily activities." *Baldwin v. Barnhart*, No. 7:03-CV-000171-FL, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (citation omitted).

Here, the ALJ did not specifically state that he was considering Claimant's impairments in combination during his RFC determination. However, he did mention that, "in assessing the claimant's residual functional capacity . . . the alleged symptoms and resultant alleged limitations deriving from impairments that are not 'severe', which includes all the claimant's alleged impairments other than degenerative disc disease, bilateral meniscus dysfunction and carpal tunnel syndrome, cannot serve as a basis for a finding of disability." (R. 11.) Earlier in the decision, the ALJ discussed at length the effects on Claimant of the impairments which he found to be severe as well as the alleged additional impairments of high blood pressure, reflux, an under-active thyroid, frequent urination, fibromyalgia, obstructive sleep apnea, and depression. (R. 10-11.) He also discussed her pain complaints and the fact that he believe that her daily activity level undermined those complaints. (R. 12); *see also*, Section V.C, *supra.*

In this case, the Court finds that the ALJ appropriately considered Claimant's impairments in combination in determining her RFC. He discussed separately and in detail the effects of not only

21

the impairments which he found to be severe, but also the alleged additional impairments, and considered Claimant's complaints of pain and level of daily activities. This, in and of itself, satisfies his duties under the applicable law. *See Baldwin,* 444 F. Supp. 2d at 465. To the extent that Claimant's contention that the ALJ failed to consider her impairments in combination in determining her RFC is simply another attempt to argue that the ALJ erred in failing to find her additional alleged impairments to be severe, the Court has already rejected that argument. *See* Section V.C, *supra.*

Therefore, for the foregoing reasons, the Court finds the ALJ appropriately assessed Claimant's RFC and took into account all of her relevant impairments. Accordingly, Claimant's argument that the ALJ failed to consider her impairments in combination in determining her RFC is rejected.

**F.      Claimant's argument that the ALJ failed to perform a function-by-function analysis in establishing her RFC.**

Claimant next argues that the ALJ failed to perform a function-by-function analysis in establishing her RFC. To that end, Claimant alleges that the ALJ failed to fully consider her ability to "sit stand, walk, lift, carry, push, pull, reach, handle, stoop, or crouch," as required by SSR 96-8p. Cl.'s Mem. at 23.

In response, the Commissioner argues that the ALJ "specifically relied upon, and incorporated by adoption, the function-by-function RFC analyses done by the State agency physicians." Comm.'s Mem. at 20. Furthermore, the Commissioner argues that, regardless, the ALJ fulfilled the purpose of SSR 96-8p–namely, deciding which exertional level is appropriate–and that expressly setting forth the functions is unnecessary. *Id.*

22

SSR 96-8p provides that an ALJ should perform a function-by-function assessment of a claimant's physical and mental capacities in determining whether the claimant can perform his or her past relevant work activity, notes seven strength demands–sitting, standing, walking, lifting, carrying, pushing, and pulling–which must be considered, and requires the ALJ to provide adequate support for conclusions regarding a claimant's abilities. SSR 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996).

Here, the ALJ did not explicitly state that he was engaging in a function-by-function analysis of Claimant's RFC. However, in determining that Claimant retained the RFC to perform light work with limitations, the ALJ made the following findings:

> I find that the claimant has not met her burden of establishing that she is unable to perform other work functions, including standing, sitting, or walking for 6 to 8 hours in a work day, occasionally lifting and carrying as much as 20 pounds, meeting the other physical non-exertional demands of work, and meeting the mental demands of work.

(R. 13.) Therefore, the ALJ specifically considered Claimant's ability to sit, stand, walk, lift, and carry. While the ALJ did not specifically mention the functions of pushing and pulling, the evidence of record does indicate that state agency medical consultant Dr. Margaret Parrish performed a function-by-function analysis on October 26, 2006, which indicated that Claimant had no functional limitations in the areas of pushing and/or pulling. (R. 246-53.) This analysis was affirmed by Dr. Joel Dascal on December 19, 2006 (R. 264-65) and by Dr. GA Jansen on July 14, 2008 (R. 269-70), and, as discussed in Section V.B, *supra*, the ALJ did not err in relying upon the state agency medical consultants' opinions.

In this case, the Court finds that the ALJ analyzed the entirety of the record, resolving inconsistencies and referring to medical evidence to support his conclusions. In so doing, the Court

23

finds that the ALJ appropriately considered the seven strength demands–sitting, standing, walking, lifting, carrying, pushing, and pulling–and provided adequate support for his conclusions regarding Claimant's abilities, as required by SSR 96-8p. Therefore, the Court finds that the ALJ did not err by failing to specifically articulate the fact that he was performing a function-by-function analysis. *See, e.g., Tarpley v. Astrue*, No. 5:08-CV-00271-FL, 2009 WL 1649774, at *11-12 (E.D.N.C. June 1, 2009) (adopting recommendation of magistrate judge which rejected a contention that an ALJ's failure to perform function-by-function analysis was error). To the extent that the ALJ did not explicitly mention all seven functions, he was not required to do so. *See, e.g., Manring v. Barnhart*, 2007 WL 201081, at *4-5 (W.D. Va. Jan. 25, 2007) (an ALJ must consider all seven strength demands listed in SSR 96-8p, but need only discuss those for which a claimant is limited).

Therefore, for the foregoing reasons, the Court finds that the ALJ appropriately performed the equivalent of a function-by-function analysis, as required by SSR 96-8p, and that his findings as to Claimant's RFC were supported by substantial evidence. Accordingly, Claimant's argument that the ALJ failed to perform a function-by-function analysis in establishing her RFC is rejected.

## G.    Claimant's argument that the ALJ failed to propose a proper hypothetical question to the VE.

Finally, Claimant argues that the ALJ failed to propose a proper hypothetical question to the VE. To that end, Claimant argues that the ALJ erred by not including all of Claimant's impairments in posing his hypothetical question. Cl.'s Mem. at 32. Similarly, Claimant also contends that the ALJ's decision "disregarded the expert's response to hypothetical questions that described some of Claimant's other physical and mental impairments," which Claimant contends were supported by the record. *Id.* at 33.

24

In response, the Commissioner argues that "[l]imitations from impairments that are 'non-severe,' and alleged limitations found not fully credible by the ALJ, are not relevant for inclusion in a hypothetical question [because] [b]y definition they do not significantly limit the ability to do basic work activities." Comm.'s Mem. at 21. Therefore, the Commissioner contends that, because the ALJ found Claimant's alleged additional impairments to be non-severe and gave good reasons for so finding, the hypothetical properly included only Claimant's severe impairments as determined by the ALJ. *Id.*

A hypothetical question posed to a VE must precisely set out the claimant's individual physical and mental impairments. *Walker v. Bowen*, 876 F.2d 1097, 1100 (4th Cir. 1989). However, the ALJ need only include in his questioning those impairments which he has found to be credible. *See, e.g., Johnson v. Astrue*, No. 5:08-CV-00515-FL, 2009 WL 3648551, at *12 (E.D.N.C. Nov. 3, 2009) (citation omitted). If an ALJ does not believe that the claimant suffers from a alleged impairment–and if substantial evidence supports such a conclusion–then the ALJ is not required to include that impairment in questioning the VE. *Id.*

Here, the ALJ posed two separate hypothetical questions to the VE. (R. 61-63); *see also*, Section IV.B, *supra*. In the first hypothetical, the ALJ described a hypothetical claimant that could occasionally lift up to 20 pounds, more frequently lift 10 pounds, and could sit and stand normally, but who could only occasionally climb, balance, stoop, crouch, kneel, and crawl, and only frequently use her right upper extremity for reaching, handling, and fingering. In the second hypothetical, the ALJ described a hypothetical claimant who, in addition to having neck and shoulder pain and the above-described limitations, suffered from lower back pain, knee pain, depression, sleep apnea, high blood pressure, dizziness, side effects from medications, and would be absent from a job for up to

25

30 days a year. In response, the VE opined that, based on the first hypothetical, the hypothetical claimant could perform several light unskilled jobs but that, based on the second hypothetical, could not perform any substantial gainful activity.

In this case, as previously discussed in Section V.D, *supra*, the Court finds that the ALJ did not err in concluding that Claimant did not suffer from the additionally alleged impairments described in the ALJ's second hypothetical question. As a result, because the ALJ did not find Claimant's claims that she suffers from these impairments to be credible–a conclusion supported by substantial evidence– the ALJ was not required to include them in his hypothetical question posed to the VE, and the ALJ did not err by disregarding the VE's response to the second hypothetical question.

Therefore, for the foregoing reasons, the Court finds that the ALJ did not err in failing to include all of Claimant's alleged limitations in the hypothetical question posed to the VE. Accordingly, Claimant's argument that the ALJ failed to pose a proper hypothetical question to the VE is rejected.

## CONCLUSION

The Court has considered all seven of Claimant's arguments and rejected each of them in turn. In so doing, the Court has determined that the ALJ analyzed all of the relevant evidence and sufficiently explained his findings and rationale. *See Sterling Smokeless Coal Co.*, 131 F.3d at 439-40. Therefore, the Court finds that substantial evidence supports the Commissioner's factual findings and that his ultimate the decision that Claimant was not disabled was reached through the application of the correct legal standards. *See Walls*, 296 F.3d at 290.

Accordingly, for the foregoing reasons, the undersigned **RECOMMENDS** that Claimant's motion for judgment on the pleadings [DE-27] be **DENIED** and that the Commissioner's motion for judgment on the pleadings [DE-28] be **GRANTED**.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This the 19th day of August, 2011.

DAVID W. DANIEL
UNITED STATES MAGISTRATE JUDGE

27